IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHRISTOPHER BREWER                                                                           PLAINTIFF
ADC #140442

V.                                        NO: 5:15CV00050 JLH/PSH

RANDY WATSON *et al*                                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Christopher Brewer, an inmate at the Tucker Maximum Security Unit of the Arkansas Department of Correction ("ADC"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on February 9, 2015, and an amended complaint on June 19, 2015 (Doc. Nos. 2 and 57). While this action has been pending, several originally-named defendants and one claim have been dismissed. The remaining defendants are Tradarius Brooks, Eddie Allen, and Jarius Sanders ("the defendants"). Brewer has stated an excessive force claim as to these remaining defendants related to alleged beatings on December 18, 2013 while Brewer was housed at the ADC's Varner SuperMax Unit

1

("Varner"). Brewer alleges the defendants were ADC employees at Varner on the date of the incidents, and the defendants do not dispute their employment status in this case.

According to Brewer, he was subjected to excessive force in multiple incidents on December 18, 2013. Brewer claims the first incident occurred when Brooks punched him in the face as he was being escorted to isolation. In the second incident, Brewer alleges that Allen, Sanders, and others picked him up and slammed him to the ground. Brewer claims the third incident occurred on that date when Allen and Sanders rushed into his cell and began beating him again. Brewer contends the final beating was by Allen, who broke away from other guards and attacked him again.

On January 25, 2016, the defendants filed a motion for summary judgment, a statement of facts, and a brief in support (Doc. Nos. 121-123).[1] The defendants claim Brewer's complaint should be dismissed because he did not exhaust his administrative remedies before he filed his lawsuit. Specifically, the defendants claim that Brewer did not file timely formal grievances after not receiving responses to 2 informal grievances within 3 days. Thus, they argue, Brewer failed to follow the ADC grievance policy in effect, and his failure should result in judgment as a matter of law for the defendants. Brewer filed a response, brief in support, and statement of facts opposing the defendants' motion (Doc. Nos. 133-135). In them, Brewer claims he did not receive timely responses to his informal grievances, admits that his formal grievances were filed 9 days after the informal grievances were filed, and argues that on appeal, the ADC ruled on the merits of his grievances. Brewer argues that the ADC's ruling on the merits essentially waives the defendants' failure to exhaust argument.

---

[1] Former defendants were also part of the motion, but Brewer's claims against them have been dismissed.

On May 13, 2016, the Court entered an order directing the defendants to provide additional information and records (Doc. No. 141). The Court noted that grievance documents attached to the defendants' motion for summary judgment indicate Brewer's grievances were rejected because he failed to file a timely formal grievance after receiving no response to his informal resolution attempt within 3 days. Brewer's appeals of those rejections state he was unaware of the time limitation in issue, made requests for access to the ADC's applicable grievance policy, and was not given access despite his requests (Doc. Nos. 121-2, page 4 and 121-3, page 4). In light of these statements, the Court directed the defendants to provide information and records related to Brewer's access to, and requests for access to, the ADC grievance policy following the incident in issue.

The defendants filed a response as directed (Doc. No. 142), and Brewer has replied (Doc. No. 149). For the reasons set forth below, the Court finds that no genuine issue of material fact exists, and the defendants are entitled to judgment as a matter of law on the issue of Brewer's failure to exhaust.

## I. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822,

825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## II. Analysis

**Background.** The defendants argue Brewer's complaint should be dismissed in its entirety because he failed to properly exhaust his administrative remedies before he filed his lawsuit. In support of their motion, the defendants have provided the affidavits of Barbara Williams, the ADC's Inmate Grievance Supervisor (Doc. No. 121-4), and Sharon L. Cantrell, the ADC's ADC/DCC Program Specialist – Grievance Supervisor at the Varner and Varner Super Max Units (Doc. No. 121-5). According to Williams and Cantrell, Brewer filed two grievances relevant to the issues in this lawsuit: VSM-14-00165, and VSM-14-00168. Brewer agrees the grievances identified by the defendants are the grievances he filed relating to the issues in this lawsuit (Doc. No. 134, page 4). Both were initially filed as informal grievances on December 26, 2013. Brewer did not designate either grievance as an emergency (Doc. Nos. 121-2 and 121-3).

After receiving no resolution, Brewer filed formal grievances on January 9, 2014, nine working days after he filed the informal grievances. Both formal grievances were rejected at the unit level as untimely because they were not initiated within the 6 working day requirement mandated in the ADC's grievance policy. Brewer appealed both findings. In his appeal of VSM-14-00165,

4

Brewer stated he did not receive a response to his informal grievance; that he was unaware of the time limits in issue because Varner did not allow him to keep the grievance policy in his possession; and that he requested the policy but did not receive it (Doc. No. 121-2, page 4). Brewer did not identify any other issues in his appeal. His appeal was denied as having no merit (Doc. No. 121-2, page 5).

In his appeal of VSM-14-00168, Brewer stated he did not receive a response to his informal grievance; that Varner did not allow inmates to order policies to keep in their possession; that when inmates order policies, it takes longer to receive them than the time required to move from the informal to the formal grievance process; and that since the incidents in issue took place, he placed law library requests for policies, and those requests were intentionally not processed by ADC employees to prevent him from "obtaining knowledge to properly complete the grievance process." (Doc. No. 121-3, page 4). Brewer did not identify any other issues in his appeal. This appeal, like the appeal in VSM-14-00165, was denied as having no merit (Doc. No. 212-3, page 5).

In response to the Court's order seeking additional information about Brewer's access to, and requests for access to, the applicable grievance policy following the incident in issue, the defendants provided a number of documents and affidavit testimony (Doc. No. 142). As will be more thoroughly discussed below, the defendants urge that the undisputed facts established by such records and testimony prove that Brewer has been familiar with the grievance process since his incarceration began in 2008, and that he was previously provided information about the grievance policy and a copy of the policy itself. The defendants claim that Brewer "has properly appealed grievances, so he is familiar with the grievance process and understands what he needs to do to timely follow each step in the grievance process." Doc. No. 142, ¶ 17. In response, Brewer states

he requested the grievance policy two times between December 18, 2013 and January 18, 2014 and did not receive it (Doc. No. 149, ¶4). He does not provide documentation or testimony supporting that he made such requests. He also maintains that the two grievances in question were decided on the merits.

**The PLRA.** The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. "The PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 922-923. It merely requires compliance with prison grievance procedures to properly exhaust. *See id.* at 922-23. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id.* at 923-924.

**The ADC grievance policy.** The applicable ADC grievance policy requires three steps to fully exhaust a grievance. First, an inmate completes an informal resolution form, which explains the issue. If he is not satisfied, he may file a formal grievance, using the same form, which is then decided by the warden or the warden's designee. Finally, if the inmate believes the problem is not resolved, he may appeal to the director, assistant, or deputy director, whose decision marks the final stage of the process (Doc. No. 121-1, pages 5-12).

More specifically, step one of the grievance process requires an inmate to seek informal resolution of a problem before he files a formal grievance. When the ADC problem solver receives an informal grievance that is not designated as an emergency, he or she is to meet with the inmate within 3 working days in an effort to resolve the issue. If the ADC problem solver fails to contact the inmate to attempt resolution, or fails to return the informal grievance within 3 working days, the inmate can than file a formal grievance. The policy states that in this situation, the formal grievance must be filed no later than 6 working days from the date the informal grievance was submitted. (Doc. No. 121-1, pages 5-8, 121-4, pages 2-3; 121-5, pages 2-3).

**Findings.** The uncontested facts establish that Brewer submitted two informal grievances on December 26, 2013 related to the claims made in this lawsuit, neither of which was designated as an emergency. Brewer was not contacted by a problem solver in an attempt to resolve the informal grievances, and the informal grievances were not returned to him, within 3 working days. Pursuant to the applicable grievance policy, once the 3 days passed without response, Brewer had another 3 working days to file formal grievances. Brewer filed formal grievances on January 9, 2014, nine working days after he submitted his informal grievances. Without question, Brewer failed to comply with the grievance policy. Brewer asks the Court to forgive this failure on two grounds.

First, Brewer claims his grievances were decided on the merits at the final stage of the process, and therefore they were exhausted despite his failure to follow the grievance policy. *See Hammett v. Cofield*, 681 F.3d 945 (8th Cir. 2012). The Court rejects this argument. In Brewer's appeals of the rejection of both grievances, he challenged the findings that the formal grievances were untimely. The findings on appeal did not address the allegations of the informal or formal

7

grievances; instead, they affirmed that the formal grievances were untimely filed. Brewer's grievances were never decided on the merits.

Second, Brewer claims that he was prevented from complying with the grievance policy by ADC staff who did not provide him access to the policy. The Court rejects this argument as well. The evidence produced by the defendants related to Brewer's access to, and requests for access to, the grievance policy establish the following facts which have not been disputed by Brewer:

- Brewer has been in continuous custody in the ADC since January 14, 2008 (Doc. No. 142, Exhibit 1).

- Brewer was housed at Varner between September 2, 2012 and July 22, 2015 (Doc. No. 142, Exhibit 1).

- Each inmate receives an ADC inmate handbook which explains generally the grievance procedure upon arrival at an ADC unit. The handbook states that the ADC problem solver receiving an informal grievance has 3 days to resolve the issue, and that an inmate can proceed to the formal grievance level if the problem solver does not respond within the 3 day time period (Doc. No. 142, Exhibit 2).

- Brewer filed 21 grievances within the ADC before filing the grievances in issue (Doc. No. 142, Exhibit 3). Some of those were rejected because of Brewer's failure to follow ADC grievance policy requirements (Doc. No. 142, Exhibit 9). Some were timely appealed, with decisions on the merits (Doc. No. 142, Exhibit 3).

- Approximately one year before he filed the grievances in issue, Brewer filed an informal grievance that was covered by the same grievance policy that covered his grievances in December 2013. That grievance was initiated December 10, 2012 (Doc. No. 142, Exhibit 11). Brewer filed

a formal grievance 8 days later. The grievance was rejected as untimely for the same reason the current grievances were found untimely.

- According to Felicia Piggee, Varner's Law Library Program Specialist since 2009, Varner's policy is to provide inmates with copies of relevant portions of policies upon request. Additionally, inmates are allowed to check out policies in accordance with the Law Library Check-out Policy (Doc. No. 142, Exhibits 6 and 7).

- Brewer requested and received the ADC grievance policy in December 2012, one year before he filed the grievances in issue (Doc. No. 142, Exhibit 8).

- Brewer requested the ADC grievance policy again on January 21, 2013, after the grievances in issue were rejected at the unit level as untimely, and after he appealed both (Doc. No. 142, Exhibit 4).

Even viewing the evidence in the light most favorable to Brewer, the Court finds that he is relying on allegations and denials, and has not demonstrated the existence of specific facts creating a genuine issue for trial. Brewer is clearly well aware of the ADC's grievance policy, and has successfully requested and received a copy of such policy in the past. He is clearly aware that the grievance policy contains time limitations, and actually had a prior grievance rejected for the same reason his grievances were rejected in this case. Brewer's allegations that ADC staff intentionally refused to provide him access to the grievance policy, and that he was therefore not aware of time limitations in it, is not supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.

For the reasons set forth herein, we find that Brewer failed to properly exhaust his available administrative remedies, and the defendants' motion for summary judgment should be granted.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.  The defendants' motion for summary judgment (Doc. No. 121) be GRANTED, and Brewer's complaint be DISMISSED WITHOUT PREJUDICE.

2.  The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 17th day of August, 2016.

_____
UNITED STATES MAGISTRATE JUDGE